**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

UNITED STATES OF AMERICA and
STATE OF MISSOURI,

        Plaintiffs,

       v.

U.S. BORAX, INC.,

        Defendant.

Civil Action No. 4:26-cv-00482-FJG

**CONSENT DECREE**

1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II. | JURISDICTION AND VENUE | 4 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 5 |
| V. | OBJECTIVES | 8 |
| VI. | PERFORMANCE OF THE WORK | 8 |
| VII. | PROPERTY REQUIREMENTS | 9 |
| VIII. | FINANCIAL ASSURANCE | 11 |
| IX. | INDEMNIFICATION AND INSURANCE | 14 |
| X. | PAYMENTS FOR RESPONSE COSTS | 16 |
| XI. | DISBURSEMENT OF SPECIAL ACCOUNT FUNDS | 17 |
| XII. | FORCE MAJEURE | 19 |
| XIII. | DISPUTE RESOLUTION | 20 |
| XIV. | STIPULATED PENALTIES | 22 |
| XV. | COVENANTS BY PLAINTIFFS | 24 |
| XVI. | COVENANTS BY SETTLING DEFENDANT | 26 |
| XVII. | EFFECT OF SETTLEMENT; CONTRIBUTION | 26 |
| XVIII. | RECORDS | 27 |
| XIX. | NOTICES AND SUBMISSIONS | 29 |
| XX. | APPENDIXES | 30 |
| XXI. | MODIFICATIONS TO DECREE | 30 |
| XXII. | SIGNATORIES | 30 |
| XXIII. | PRE-ENTRY PROVISIONS | 30 |
| XXIV. | INTEGRATION | 31 |
| XXV. | FINAL JUDGMENT | 31 |

# I. BACKGROUND

1. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Missouri ("State") filed a complaint in this matter under sections 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Missouri Hazardous Waste Cleanup Law, §§ 260.500 to 260.550 RSMo, and the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430 RSMo.

2. In the complaint the United States alleges that U.S. Borax, Inc., ("Settling Defendant") is liable under section 107 of CERCLA and seeks from Settling Defendant, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Armour Road Superfund Site in Missouri ("Site"), together with accrued interest; and (2) performance by the Settling Defendant of a response action at the Site consistent with the National Contingency Plan, 40 C.F.R. part 300 ("NCP"). The complaint also alleges that Settling Defendant is liable to the State for payment of State response costs under the Missouri Hazardous Waste Cleanup Law, §§ 260.500 to 260.550 RSMo, and the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430 RSMo.

3. In accordance with the NCP and section 121(f)(1)(F) of CERCLA, EPA notified the State of Missouri ("State") on May 2, 2023, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the Remedial Design and Remedial Action ("RD/RA") for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and to be a party to this Consent Decree ("Decree").

4. In accordance with section 122(j)(1) of CERCLA, EPA notified the U.S. Department of the Interior and the Missouri Department of Natural Resources on May 18, 2023, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Decree.

5. The Settling Defendant that has entered into this Decree does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

6. In accordance with section 105 of CERCLA, EPA listed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. part 300, Appendix B, by publication in the Federal Register on May 10, 1999, 64 Fed. Reg. 24949.

7. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, U.S. Borax, Inc. completed a Remedial Investigation for the Site on May 17, 2013, and a Feasibility Study for the Site on July 10, 2020, in accordance with 40 C.F.R. § 300.430.

8. In accordance with section 117 of CERCLA and 40 C.F.R § 300.430(f), EPA published notice of the completion of the Feasibility Study and of the proposed plan for Remedial Action on June 20, 2022, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting and comments received are available to the public as part of the administrative record upon which the Director of the Superfund and Emergency Management Division, EPA Region 7, based the selection of the response action.

9. EPA selected a remedial action to be implemented at the Site, which is embodied in an Interim Record of Decision ("IROD"), executed on September 21, 2022, on which the State had a reasonable opportunity to review and comment. The selected remedial action is an interim response action that will allow time for additional evaluation for the restoration potential of the aquifer. Once further evaluations are completed, EPA will issue a final ROD. The IROD includes a summary of responses to the public comments. Notice of the proposed plan was published in accordance with section 117(b) of CERCLA.

10. Based on the information currently available, EPA and the State each has determined that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this Decree.

11. The Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## II.    JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1367, and 1345, and section 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. Settling Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III.    PARTIES BOUND

13. This Decree is binding upon the United States and the State and upon Settling Defendant and their successors. Unless the United States otherwise consents, (a) any change in ownership or corporate or other legal status of Settling Defendant, including any transfer of assets, or (b) any Transfer of the Site or any portion thereof, does not alter any of Settling Defendant's obligations under this Decree.

4

14. In any action to enforce this Decree, Settling Defendant may not raise as a defense the failure of any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Settling Defendant to take any action necessary to comply with this Decree. Settling Defendant shall provide notice of this Decree to each person representing Settling Defendant with respect to the Site or the Work. Settling Defendant shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## IV. DEFINITIONS

15. Terms not otherwise defined in this Settlement have the meanings assigned in CERCLA or in regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" means this consent decree, all appendixes attached hereto (listed in Section XX). If there is a conflict between a provision in Sections I through XXV and a provision in any appendix or deliverable, the provision in Sections I through XXV controls.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

"Fund" means the Hazardous Substance Superfund established under section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States: (a) pays between April 30, 2023, and the Effective Date; and (b) pays after the Effective Date in implementing, overseeing, or enforcing this Decree, including: (i) in developing, reviewing and approving deliverables generated under this Decree; (ii) in overseeing Settling Defendant's performance of the Work; (iii) in assisting or taking action to obtain access or use restrictions under ¶ 23.e; (iv) in securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including any compensation paid; (v) in taking action under ¶ 31 (Access to Financial Assurance); (vi) in taking response action described in ¶ 63 because of Settling Defendant's failure to take emergency action under ¶ 5.5 of the SOW; (vii) in implementing a Work Takeover under ¶ 22; (viii) in implementing community involvement activities including the cost of any technical assistance grant provided under section 117(e) of CERCLA; (ix) in enforcing this Decree, including all costs paid under Section

5

XIII (Dispute Resolution) and all litigation costs; and (x) in conducting periodic reviews in accordance with section 121(c) of CERCLA. Future Response Costs also includes all Interest accrued after April 30, 2023, on EPA's unreimbursed costs (including Past Response Costs) under section 107(a) of CERCLA.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (*i.e.*, easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Fund, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Interim Record of Decision" or "IROD" means the EPA decision document that memorializes the selection of the remedial action relating to the Site signed on September 21, 2022, by the Director, Superfund and Emergency Management Division, EPA Region 7, and all attachments thereto. The IROD is attached as Appendix A.

"National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under section 105 of CERCLA, codified at 40 C.F.R. part 300, and any amendments thereto.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" means the United States, the State, and Settling Defendant.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States paid in connection with the Site through April 30, 2023, plus all interest on such costs accrued under section 107(a) of CERCLA through such date.

"Performance Standards" means the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the IROD.

"Plaintiffs" means the United States and the State.

6

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k, (also known as the Resource Conservation and Recovery Act).

"Remedial Action" means the remedial action selected in the IROD.

"Remedial Design" means those activities to be undertaken by Settling Defendant to develop plans and specifications for implementing the Remedial Action as set forth in the SOW.

"Scope of the Remedy" means the scope of the remedy set forth in ¶ 1.2 of the SOW.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendant" shall mean U.S. Borax Inc. ("Borax").

"Site" means the Armour Road Superfund Site, comprising approximately 1.8 acres, located at 2251 Armour Road in North Kansas City, Clay County, Missouri, and depicted generally on the map attached as Appendix C.

"Special Account" means the special account, within the Fund, established for the Site by EPA under section 122(b)(3) of CERCLA.

"State" means the State of Missouri, including the Missouri Department of Natural Resources.

"State Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the State: (a) pays between April 30, 2023, and the Effective Date; and (b) pays after the Effective Date in implementing, overseeing, or enforcing this Decree under the Missouri Hazardous Waste Cleanup Law, §§ 260.500 to 260.550 RSMo, and the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430 RSMo.

"State Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the State paid in connection with the Site through April 30, 2023, plus all interest on such costs accrued under section 107(a) of CERCLA through such date.

"Statement of Work" or "SOW" means the document attached as Appendix B, which describes the activities Settling Defendant must perform to implement and maintain the effectiveness of the Remedial Action.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" means (a) any "hazardous substance" under section 101(14) of CERCLA; (b) any pollutant or contaminant under section 101(33) of CERCLA; (c) any "solid

7

waste" under section 1004(27) of RCRA; and (d) any "hazardous substance" under section 260.500 RSMo.

"Work" means all obligations of Settling Defendant under Sections VI (Performance of the Work) through IX (Indemnification and Insurance).

"Work Takeover" means EPA's assumption of the performance of any of the Work in accordance with ¶ 22.

## V.    OBJECTIVES

16.    The objectives of the Parties in entering into this Decree are to protect public health, welfare, and the environment through the design, implementation, and maintenance of a response action at the Site by Settling Defendant, to pay response costs of Plaintiffs, and to resolve and settle the claims of Plaintiffs against Settling Defendant and the claims of the State and Settling Defendant that were or could have been asserted against the United States with regard to this Site as provided in this Decree.

## VI.    PERFORMANCE OF THE WORK

17.    Settling Defendant shall finance, develop, implement, operate, maintain, and monitor the effectiveness of the Remedial Action all in accordance with the SOW, any modified SOW and all EPA-approved, conditionally approved, or modified deliverables as required by the SOW or modified SOW.

18.    Nothing in this Decree and no EPA approval of any deliverable required under this Decree constitutes a warranty or representation by EPA or the State that completion of the Work will achieve the Performance Standards.

19.    Settling Defendant shall finance and perform the Work and pay amounts due under this Decree.

20.    **Modifications to the Remedial Action and Further Response Actions**

a.    Nothing in this Decree limits EPA's authority to modify the Remedial Action or to select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Nothing in this Decree limits Settling Defendant's rights, under sections 113(k)(2) or 117 of CERCLA, to comment on any modified or further response actions proposed by EPA.

b.    If EPA modifies the Remedial Action in order to achieve or maintain the Performance Standards, or both, or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy, then Settling Defendant shall implement the modification as provided in ¶ 20.c.

c.    Upon receipt of notice from EPA that it has modified the Remedial Action as provided in ¶ 20.b and requesting that Settling Defendant implement the modified Remedial Action, Settling Defendant shall implement the modified Remedial Action, subject to its right to

8

initiate dispute resolution under Section XIII within 30 days after receipt of EPA's notice. Settling Defendant shall modify the SOW, or related work plans, or both in accordance with the Remedial Action modification or, if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The Remedial Action modification or further response action, the approved modified SOW, and any related work plans will be deemed to be incorporated into and enforceable under this Decree.

21. **Compliance with Applicable Law**. Nothing in this Decree affects Settling Defendant's obligations to comply with all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the IROD and the SOW. The activities conducted in accordance with this Decree, if approved by EPA, will be deemed to be consistent with the NCP as provided under section 300.700(c)(3)(ii).

22. **Work Takeover**

a. If EPA determines that Settling Defendant (i) has ceased to perform any of the Work required under this Section; (ii) is seriously or repeatedly deficient or late in performing the Work required under this Section; or (iii) is performing the Work required under this Section in a manner that may cause an endangerment to human health or welfare or the environment, EPA may issue a notice of Work Takeover to Settling Defendant, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Settling Defendant must remedy the circumstances giving rise to the notice. The Remedy Period will be 20 days, unless EPA determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be 10 days.

b. If, by the end of the Remedy Period, Settling Defendant does not remedy to EPA's satisfaction the circumstances giving rise to the notice of Work Takeover, EPA may notify Settling Defendant and, as it deems necessary, commence a Work Takeover.

c. EPA may conduct the Work Takeover during the pendency of any dispute under Section XIII but shall terminate the Work Takeover if and when: (i) Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to the notice of Work Takeover; or (ii) upon the issuance of a final determination under Section XIII (Dispute Resolution) that EPA is required to terminate the Work Takeover.

## VII. PROPERTY REQUIREMENTS

23. **Agreements Regarding Access and Noninterference**

a. As used in this Section, "Affected Property" means any real property, including the Site, where EPA determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.

b. Settling Defendant shall use best efforts to secure from the owner(s) of all Affected Property, an agreement, enforceable by Settling Defendant and by Plaintiffs, requiring such owner to provide Plaintiffs and Settling Defendant, and their respective representatives,

9

contractors, and subcontractors with access at all reasonable times to such owner's property to conduct any activity regarding the Decree, including the following:

(1)  implementing the Work and overseeing compliance with the Decree;

(2)  conducting investigations of contamination at or near the Site;

(3)  assessing the need for, planning, or implementing additional response actions at or near the Site;

(4)  determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

(5)  implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

c.  Further, each agreement required under ¶ 23.b must commit the owner to refrain from using its property in any manner that EPA determines will pose an unacceptable risk to human health or welfare or the environment as a result of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

d.  As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements.

e.  Settling Defendant shall provide to EPA and the State a copy of each agreement required under ¶ 23.b. If Settling Defendant cannot accomplish what is required through best efforts in a timely manner, it shall notify EPA, and include a description of the steps taken to achieve the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, to obtain such access or use restrictions.

24.  If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendant shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such Institutional Controls.

25.  Notwithstanding any provision of the Decree, EPA and the State retain all of their access authorities and rights, as well as all of their rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

10

# VIII.  FINANCIAL ASSURANCE

26.      To ensure completion of the Work required under Section VI, Settling Defendant shall secure financial assurance, initially in the amount of $3,230,205 ("Estimated Cost of the Work"), for the benefit of EPA. The financial assurance must: (i) be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA; and (ii) be satisfactory to EPA. As of the date of lodging of this Decree, the sample documents can be found under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/. Settling Defendant may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, insurance policies, or some combination thereof. The following are acceptable mechanisms:

a.      a surety bond guaranteeing payment, performance of the Work, or both, that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      an irrevocable letter of credit, payable to EPA or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.      a trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d.      a policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency;

e.      a demonstration by the Settling Defendant that it meets the relevant test criteria of ¶ 27; or

f.      a guarantee to fund or perform the Work executed in favor of EPA by a company: (1) that is a direct or indirect parent company of the Settling Defendant or has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with the Settling Defendant; and (2) demonstrates to EPA's satisfaction that it meets the financial test criteria of ¶ 27.

27.      Settling Defendant seeking to provide financial assurance by means of a demonstration or guarantee under ¶ 26.e or 26.f must, within 30 days after the Effective Date:

a.      demonstrate that:

(1)      the Settling Defendant or guarantor has:

i.      two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus

11

depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5; and

    ii.    net working capital and tangible net worth each at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

    iii.    tangible net worth of at least $10 million; and

    iv.    assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; or

    (2)    the Settling Defendant or guarantor has:

    i.    a current rating for its senior unsecured debt of AAA, AA, A, or BBB as issued by Standard and Poor's or Aaa, Aa, A or Baa as issued by Moody's; and

    ii.    tangible net worth at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

    iii.    tangible net worth of at least $10 million; and

    iv.    assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

    b.    submit to EPA for the Settling Defendant or guarantor: (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion; and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from EPA. As of the date of lodging of this Decree, a sample letter and report is available under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

28.    Settling Defendant providing financial assurance by means of a demonstration or guarantee under ¶ 26.e or 26.f must also:

12

a.      annually resubmit the documents described in ¶ 27.b within 90 days after the close of the Settling Defendant's or guarantor's fiscal year;

b.      notify EPA within 30 days after the Settling Defendant or guarantor determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

c.      provide to EPA, within 30 days of EPA's request, reports of the financial condition of the Settling Defendant or guarantor in addition to those specified in ¶ 27.b; EPA may make such a request at any time based on a belief that the Settling Defendant or guarantor may no longer meet the financial test requirements of this Section.

29.      Settling Defendant shall, within 15 days after the Effective Date, seek EPA's approval of the form of Settling Defendant's financial assurance. Within 30 days after the Effective Date, Settling Defendant shall secure all executed or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the Regional Financial Management Officer, to DOJ, to EPA, and to the State.

30.      Settling Defendant shall diligently monitor the adequacy of the financial assurance. If Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Settling Defendant shall notify EPA of such information within seven days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the Settling Defendant of such determination. Settling Defendant shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 60 days. Settling Defendant shall follow the procedures of ¶ 32 in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other requirement of this Decree.

31.      **Access to Financial Assurance**

a.      If EPA issues a notice of a Work Takeover under ¶ 22.b, then, in accordance with any applicable financial assurance mechanism, EPA may require that any funds guaranteed be paid in accordance with ¶ 31.d.

b.      If EPA is notified that the issuer of a financial assurance mechanism intends to cancel the mechanism, and the Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 31.d.

13

c.      If, upon issuance of a notice of a Work Takeover under ¶ 22.b, either: (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism], whether in cash or in kind, to continue and complete the Work; or (2) the financial assurance is a demonstration or guarantee under ¶ 26.e or 26.f, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendant shall, within 15 days after such demand, pay the amount demanded as directed by EPA.

d.      Any amounts required to be paid under this ¶ 31 must be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the Fund or into the Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the Fund.

32.     **Modification of Amount, Form, or Terms of Financial Assurance**. Beginning after the first anniversary of the Effective Date, and no more than once per calendar year, Settling Defendant may submit a request to change the form, terms, or amount of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 29, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendant of its decision regarding the request. Settling Defendant may initiate dispute resolution under Section XIII regarding EPA's decision within 30 days after receipt of the decision. Settling Defendant may modify the form, terms, or amount of the financial assurance mechanism only: (a) in accordance with EPA's approval; or (b) in accordance with any resolution of a dispute under Section XIII. Settling Defendant shall submit to EPA, within 30 days after receipt of EPA's approval or consistent with the terms of the resolution of the dispute, documentation of the change to the form, terms, or amount of the financial assurance instrument.

33.     **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA issues a Certification of Work Completion under ¶ 5.10 of the SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XIII.

## IX.     INDEMNIFICATION AND INSURANCE

34.     **Indemnification**

a.      Plaintiffs do not assume any liability by entering into this Decree or by virtue of any designation of Settling Defendant as EPA's and the State's authorized representatives under section 104(e)(1) of CERCLA. Settling Defendant shall indemnify and save and hold harmless Plaintiffs and their officials, agents, employees, contractors,

14

subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities under this Decree, including any claims arising from any designation of Settling Defendant as EPA's and the State's authorized representatives under section 104(e)(1) of CERCLA. Further, Settling Defendant agrees to pay Plaintiffs all costs they incur including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiffs based on negligent or other wrongful acts or omissions of Settling Defendant, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control in carrying out activities under this Decree. Plaintiffs may not be held out as parties to any contract entered into by or on behalf of Settling Defendant in carrying out activities under this Decree. The Settling Defendant and any such contractor may not be considered an agent of Plaintiffs.

b. Each Plaintiff shall give Settling Defendant notice of any claim for which such Plaintiff plans to seek indemnification in accordance with this ¶ 34, and shall consult with Settling Defendant prior to settling such claim.

35. Settling Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiffs for damages or reimbursement or for set-off of any payments made or to be made to Plaintiffs, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work or other activities on or relating to the Site, including claims on account of construction delays. In addition, Settling Defendant shall indemnify and save and hold Plaintiffs harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between the Settling Defendant and any person for performance of work at or relating to the Site, including claims on account of construction delays.

36. **Insurance**. Settling Defendant shall secure, by no later than 15 days before commencing any on-site Work, the following insurance: (a) commercial general liability insurance with limits of liability of $1 million per occurrence; (b) automobile liability insurance with limits of liability of $1 million per accident; and (c) umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits. The insurance policy must name Plaintiffs as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant under this Decree. Settling Defendant shall maintain this insurance until the first anniversary after issuance of EPA's Certification of Remedial Action Completion under ¶ 5.7 of the SOW. In addition, for the duration of this Decree, Settling Defendant shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Decree. Prior to commencement of the Work, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor

15

or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendant shall ensure that all submittals to EPA under this Paragraph identify the Armour Road Superfund Site in North Kansas City, Missouri and the civil action number of this case.

## X.   PAYMENTS FOR RESPONSE COSTS

37.   **Payments by Settling Defendant for Future Response Costs**

a.   **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant a bill for Future Response Costs, including a listing direct and indirect costs paid by EPA, its contractors, subcontractors, and DOJ. Settling Defendant may initiate a dispute under Section XIII regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (1) whether EPA has made an arithmetical error; (2) whether EPA has included a cost item that is not within the definition of Future Response Costs; or (3) whether EPA has paid excess costs as a direct result of an action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

b.   **Payment of Bill**. Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (1) the uncontested bill or portion of bill, if late, and; (2) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link, and including references to the Site/Spill ID and DJ numbers listed in ¶ 81 and the purpose of the payment. Settling Defendant shall send notices of this payment to DOJ and EPA.

c.   **Payments by Settling Defendant to State**. Settling Defendant shall pay to the State all State Future Response Costs not inconsistent with the NCP. The State may send Settling Defendant a bill requiring payment that includes an accounting, which includes direct and indirect costs incurred by the State and its contractors and subcontractors, on a periodic basis. Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within 60 days after receipt of the bill. Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Settling Defendant may initiate a dispute under Section XIII regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (i) whether the State has made an arithmetical error; (ii) whether the State has included a cost item that is not within the definition of Future Response Costs; or (iii) whether the State has paid excess costs as a direct result of a State action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection. Settling Defendant shall make all payments to the State required by this Paragraph in accordance with ¶ 59.b.

16

d. **Deposit of Payments**. EPA may, in its unreviewable discretion, deposit the amounts paid under ¶ 37.a in the Fund, in the Special Account, or both. EPA may, in its unreviewable discretion, retain and use any amounts deposited in the Special Account to conduct or finance response actions at or in connection with the Site, or transfer those amounts to the Fund.

## XI. DISBURSEMENT OF SPECIAL ACCOUNT FUNDS

38. **Creation of the Disbursement Special Account and Agreement to Disburse Funds to Settling Defendant**. Within 30 days after the Effective Date, EPA will establish the Armour Road Superfund Site Disbursement Special Account ("Disbursement Special Account") and shall transfer $1,500,000 from the Special Account to the Disbursement Special Account. Subject to the terms and conditions set forth in this Section, EPA agrees to make the funds in the Disbursement Special Account, including Interest Earned on the funds in the Disbursement Special Account, available for disbursement to Settling Defendant as partial reimbursement for performance of work milestones as outlined in ¶ 39 below. EPA shall disburse funds from the Disbursement Special Account to Settling Defendant in accordance with the procedures and milestones for phased disbursement set forth in this Section. For purposes of this Paragraph, "Interest Earned" means interest earned on amounts in the Armour Road Superfund Site Disbursement Special Account, which will be computed monthly at a rate based on the annual return on investments of the EPA Hazardous Substance Superfund. The applicable rate of interest will be the rate in effect at the time the interest accrues.

39. **Timing and Amount of Disbursements**. Within 30 days after EPA's receipt of a Cost Summary and Certification, as defined by ¶ 41.b, or if EPA has requested additional information under ¶ 41.b or a revised Cost Summary and Certification under ¶ 41.d, within 30 days after receipt of the additional information or revised Cost Summary and Certification, and subject to the conditions set forth in this Section, EPA shall disburse the funds from the Disbursement Special Account at the completion of the following milestones, and in the amounts set forth below:

| Milestone | Funds to be Disbursed |
|---|---|
| 1. EPA approval of Remedial Action Work Plan | Up to $500,000 |
| 2. EPA approval of Remedial Action Construction Completion | Up to $500,000 additional |
| 3. After final round of injections and two years of monitoring | Up to remainder of funds |

40. EPA shall disburse the funds from the Disbursement Special Account to Settling Defendant using written instructions provided by Settling Defendant pursuant to ¶ 81.

41. **Requests for Disbursement of Special Account Funds**

a. Within 30 days after issuance of EPA's written confirmation that a milestone of the Work, as defined in ¶ 39, has been satisfactorily completed, Settling Defendant shall submit to EPA a Cost Summary and Certification, as defined in ¶ 41.b, covering the Work performed up to the date of completion of that milestone. Settling Defendant shall not include in any submission costs included in a previous Cost Summary and Certification following

17

completion of an earlier milestone of the Work if those costs have been previously sought or reimbursed in accordance with ¶ 39.

b.        Each Cost Summary and Certification must include a complete and accurate written cost summary and certification of the necessary costs incurred and paid by Settling Defendant for the Work covered by the particular submission, excluding costs not eligible for disbursement under ¶ 42. Each Cost Summary and Certification must contain the following statement signed by either the Chief Financial Officer of Settling Defendant or an Independent Certified Public Accountant:

To the best of my knowledge, after thorough investigation and review of Settling Defendant's documentation of costs incurred and paid for Work performed in accordance with this Decree [insert, as appropriate: "up to the date of completion of milestone 1," "between the date of completion of milestone 1 and the date of completion of milestone 2," or "between the date of completion of milestone 2 and the date of completion of the milestone 3,"] I certify that the information contained in or accompanying this submission is true, accurate, and complete. I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

c.        The Chief Financial Officer of Settling Defendant or Independent Certified Public Accountant shall also provide EPA a list of the documents that he or she reviewed in support of the Cost Summary and Certification. Upon request by EPA, Settling Defendant shall submit to EPA any additional information that EPA deems necessary for its review and approval of a Cost Summary and Certification.

d.        If EPA finds that a Cost Summary and Certification includes a arithmetical error, costs excluded under ¶ 42, costs that are inadequately documented, or costs submitted in a prior Cost Summary and Certification, it will notify Settling Defendant and provide it an opportunity to cure the deficiency by submitting a revised Cost Summary and Certification. If Settling Defendant fails to cure the deficiency within 15 days after being notified of, and given the opportunity to cure, the deficiency, EPA will recalculate Settling Defendant's costs eligible for disbursement for that submission and disburse the corrected amount to Settling Defendant in accordance with the procedures in ¶ 39. Settling Defendant may dispute EPA's recalculation under this Paragraph in accordance with Section XIII. In no event may Settling Defendant be disbursed funds from the Disbursement Special Account in excess of amounts properly documented in a Cost Summary and Certification accepted or modified by EPA.

42.        **Costs Excluded from Disbursement**. The following costs are excluded from, and may not be sought by Settling Defendant for, disbursement from the Disbursement Special Account: (a) response costs paid in accordance with Section X; (b) any other payments made by Settling Defendant to the United States in accordance with this Decree, including any Interest or stipulated penalties paid in accordance with Sections X or XIV; (c) attorneys' fees and costs, except for reasonable attorneys' fees and costs necessarily related to obtaining access and implementing institutional controls as required by Section VII; (d) costs of any response activities Settling Defendant performs that are not required under, or approved by EPA under, this Decree; (e) costs related to Settling Defendant's litigation, settlement, development of

potential contribution claims, or identification of defendants; (f) internal costs of Settling Defendant, including salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Defendant directly performing the Work; (g) any costs incurred by Settling Defendant before the Effective Date except for approved Work completed in accordance with this Decree; or (h) any costs incurred by Settling Defendant under Section XIII.

43. **Termination of Disbursements**. EPA's obligation to disburse funds from the Disbursement Special Account under this Decree terminates upon EPA's determination that Settling Defendant: (a) has knowingly submitted a materially false or misleading Cost Summary and Certification; (b) has submitted a materially inaccurate or incomplete Cost Summary and Certification, and has failed to correct the materially inaccurate or incomplete Cost Summary and Certification within 15 days after being notified of, and given the opportunity to cure, the deficiency; or (c) failed to submit a Cost Summary and Certification as required by ¶ 41 within 15 days (or such longer period as EPA agrees) after being notified that EPA intends to terminate its obligation to make disbursements under this Section because of Settling Defendant's failure to submit the Cost Summary and Certification as required by ¶ 41. EPA's obligation to disburse funds from the Disbursement Special Account also terminates upon EPA's assumption of performance of any portion of the Work in accordance with ¶ 22, when such assumption of performance of the Work is not challenged by Settling Defendant or, if challenged, is upheld under Section XIII. Settling Defendant may dispute EPA's termination of special account disbursements under Section XIII.

44. **Recapture of Disbursements**. Upon termination of disbursements from the Disbursement Special Account under ¶ 43, if EPA has previously disbursed funds from the Disbursement Special Account for activities specifically related to the reason for termination, e.g., discovery of a materially false or misleading submission after disbursement of funds based on that submission, EPA shall submit a bill to Settling Defendant for those amounts already disbursed from the Disbursement Special Account specifically related to the reason for termination, plus Interest on that amount covering the period from the date of disbursement of the funds by EPA to the date of repayment of the funds by Settling Defendant. Within 30 days after receipt of EPA's bill, Settling Defendant shall reimburse the Fund for the total amount billed. Payment must be made in accordance with ¶ 37.b. Upon receipt of payment, EPA may, in its sole discretion, deposit all or any portion thereof in the Special Account, the Disbursement Special Account, or the Fund.

45. **Balance of Special Account Funds**. After EPA issues its written Certification of Remedial Action Completion in accordance with this Decree, and after EPA completes all disbursements to Settling Defendant in accordance with this Section, if any funds remain in the Disbursement Special Account, EPA may, in its sole discretion, transfer such funds to the Special Account or to the Fund.

## XII. FORCE MAJEURE

46. "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of the Work despite Settling Defendant's best efforts to fulfill the obligation. Given the need to protect public

19

health or welfare and the environment, the requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

47.     If any event occurs for which Settling Defendant will or may claim a force majeure, Settling Defendant shall notify EPA's Project Coordinator by email. The deadline for the initial notice is 5 days after the date Settling Defendant first knew or should have known that the event would likely delay performance. Settling Defendant shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Settling Defendant knew or should have known. Within 7 days thereafter, Settling Defendant shall send a further notice to EPA and the State that includes: (i) a description of the event and its effect on Settling Defendant's completion of the requirements of the Decree; (ii) a description of all actions taken or to be taken to prevent or minimize the adverse effects or delay; (iii) the proposed extension of time for Settling Defendant to complete the requirements of the Decree; (iv) a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (v) all available proof supporting their claim of force majeure. Failure to comply with the notice requirements herein regarding an event precludes Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 46 and whether Settling Defendant has exercised their best efforts under ¶ 46, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

48.     EPA, after a reasonable opportunity for review and comment by the State, will notify Settling Defendant of its determination whether Settling Defendant is entitled to relief under ¶ 46, and, if so, the duration of the extension of time for performance of the obligations affected by the force majeure. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. Settling Defendant may initiate dispute resolution under Section XIII regarding EPA's determination within 15 days after receipt of the determination. In any such proceeding, Settling Defendant has the burden of proving that it is entitled to relief under ¶ 46 and that their proposed extension was or will be warranted under the circumstances.

49.     The failure by EPA to timely complete any activity under the Decree or the SOW is not a violation of the Decree, provided, however, that if such failure prevents Settling Defendant from timely completing a requirement of the Decree, Settling Defendant may seek relief under this Section.

## XIII.  DISPUTE RESOLUTION

50.     Unless otherwise provided in this Decree, Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling

20

Defendant shall not initiate a dispute challenging the IROD. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

51. A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute"). A notice is timely if sent within 30 days after receipt of the EPA notice or determination giving rise to the dispute, or within 15 days in the case of a force majeure determination. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by EPA is binding unless Settling Defendant initiates formal dispute resolution under ¶ 52. By agreement of the parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

52. **Formal Dispute Resolution**

a. **Statements of Position**. Settling Defendant may initiate formal dispute resolution by serving on the Plaintiffs, within 20 days after the conclusion of informal dispute resolution under ¶ 51, an initial Statement of Position regarding the matter in dispute. The Plaintiffs' responsive Statements of Position are due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 days after receipt of the response. If appropriate, EPA may extend the deadlines for filing statements of position for up to 45 days and may allow the submission of supplemental statements of position.

b. **Formal Decision**. The Director of the Superfund & Emergency Management Division, EPA Region 7, will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendant unless it timely seeks judicial review under ¶ 53.

c. **Compilation of Administrative Record**. EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

53. **Judicial Review**

a. Settling Defendant may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b. **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a Work Takeover is warranted under ¶ 22; (iv) determinations about financial assurance under Section VIII; (vi) EPA's selection of

21

modified or further response actions; (vii) any other items requiring EPA approval under the Decree; and (viii) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendant bear the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c. Judicial review of any dispute not governed by ¶ 53.b shall be governed by applicable principles of law.

54. **Escrow Account**. For disputes regarding a Future Response Cost billing, Settling Defendant shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"); (b) remit to that escrow account funds equal to the amount of the contested Future Response Costs; and (c) send to EPA copies of the correspondence and of the payment documentation (e.g., the check) that established and funded the escrow account, including the name of the bank, the bank account number, and a bank statement showing the initial balance in the account. EPA may, in its unreviewable discretion, waive the requirement to establish the escrow account. Settling Defendant shall cause the escrow agent to pay the amounts due to EPA and the State under ¶ 37, if any, by the deadline for such payment in ¶ 37. Settling Defendant is responsible for any balance due under ¶ 37 after the payment by the escrow agent.

55. The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as EPA agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 58.

## XIV. STIPULATED PENALTIES

56. Settling Defendant is liable to the United States (75%) and the State (25%) for the following stipulated penalties:

a. for any failure: (i) to pay any amount due under Section X; (ii) to establish and maintain financial assurance in accordance with Section VIII; (iii) to submit timely or adequate deliverables under Section 8 of the SOW; or (iv) for failure to timely perform a requirement set forth in the SOW:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $1,500 |

b. for any failure to submit timely or adequate deliverables required by this Decree other than those specified in ¶ 56.a:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |

22

| 31st day and beyond | $1,500 |
|---|---|

57. **Work Takeover Penalty**. If EPA commences a Work Takeover, Settling Defendant is liable for a stipulated penalty in the amount of $100,000. This stipulated penalty is in addition to the remedy available to EPA under ¶ 31 (Access to Financial Assurance) to fund the performance of the Work by EPA.

58. **Accrual of Penalties**. Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate non-compliances with this Decree. Stipulated penalties accrue regardless of whether Settling Defendant has been notified of its noncompliance, and regardless of whether Settling Defendant has initiated dispute resolution under Section XIII, provided, however, that no penalties will accrue as follows:

a. with respect to a submission that EPA subsequently determines is deficient under ¶ 7.6 of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency;

b. with respect to a matter that is the subject of dispute resolution under Section XIII, during the period, if any, beginning on the 21st day after the later of the date that EPA's Statement of Position is received or the date that Settling Defendant's reply thereto (if any) is received until the date of the Formal Decision under ¶ 52.b; or

c. with respect to a matter that is the subject of judicial review by the Court under ¶ 53, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

59. **Demand and Payment of Stipulated Penalties.**

a. **Payments to EPA.** EPA may send Settling Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendant may initiate dispute resolution under Section XIII within 30 days after receipt of the demand. Settling Defendant shall pay the amount demanded or, if it initiates dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Settling Defendant shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID and DJ numbers listed in ¶ 81, and the purpose of the payment. Settling Defendant shall send a notice of this payment to DOJ and EPA. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendant under the Decree.

23

b.        **Payments to the State.** Settling Defendant shall make all payments to the State under this Section by forwarding a corporate check, payable to "State of Missouri" to the Office of the Attorney General, P.O. Box 899, Jefferson City, Missouri, 65102-0899, Attention Collections Specialist, Financial Services Section. Checks must identify the name of the site, the location of the site, the EPA identification number for the Site if any, and the docket number of this Order. Settling Defendant shall forward a copy of the check and transmittal letter to the State Project Coordinator in accordance with ¶ 81.

60.        Nothing in this Decree limits the authority of the United States or the State: (a) to seek any remedy otherwise provided by law for Settling Defendant's failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Settling Defendant's non-compliances with this Decree or of the statutes and regulations upon which it is based, including penalties under section 122(*l*) of CERCLA, provided, however, that the United States may not seek civil penalties under section 122(*l*) of CERCLA for any noncompliance for which a stipulated penalty is provided for in this Decree, except in the case of a willful noncompliance with this Decree.

61.        Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XV.        COVENANTS BY PLAINTIFFS

62.        **Covenants for Settling Defendant**. Subject to ¶ 64, the United States covenants not to sue or to take administrative action against Settling Defendant under sections 106 and 107(a) of CERCLA regarding the Work, Past Response Costs, and Future Response Costs.

63.        The covenants under ¶ 62: (a) take effect upon the Effective Date; (b) are conditioned, respectively, on the satisfactory performance by Settling Defendant of the requirements of this Decree; (c) extend to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant; and (d) do not extend to any other person.

64.        **General Reservations**. Notwithstanding any other provision of this Decree, the United States and the State reserve, and this Decree is without prejudice to, all rights against Settling Defendant regarding the following:

a.        liability for failure by Settling Defendant to meet a requirement of this Decree;

b.        liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.        liability based on Settling Defendant's ownership of the Site when such ownership commences after Settling Defendant's signature of this Decree;

24

d. liability based on Settling Defendant's operation of the Site when such operation commences after Settling Defendant's signature of this Decree and does not arise solely from Settling Defendant's performance of the Work;

e. liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, after signature of this Decree by Settling Defendant, other than as provided in the IROD, under this Decree, or ordered by EPA;

f. liability for the final response action;

g. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments; and

h. liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, but that are not covered by ¶ 20.b; and

i. criminal liability.

65. **Covenants for Settling Defendant by the State and the State's General Reservation of Rights**. In consideration of the actions that will be performed and payments that will be made by Settling Defendant under the terms of this Consent Decree, and except as specifically provided in this Consent Decree, the State covenants not to sue or to take administrative action against Settling Defendant pursuant to sections 106 and 107(a) of CERCLA regarding the Work, State Past Response Costs, and State Past Future Costs, and sections 260.510 and 260.530 of the Missouri Revised Statutes for performance of the Work and for recovery of the State's response and oversight costs from the Effective Date through the completion of the Work. The State's covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of all obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendant, and do not extend to any other person. Settling Defendant is not released from liability, if any, and Settling Defendant retains all defenses for any State enforcement actions that the State deems appropriate for matters beyond the scope of this Consent Decree including, but not limited to, the following:

a. penalties or injunctive relief under the Missouri Hazardous Waste Management Law or its implementing regulations, or under other federal or state laws or regulations, except as expressly stated herein;

b. criminal charges;

c. claims for natural resource damages.

66. Subject to ¶¶ 62 and 65, nothing in this Decree limits any authority of Plaintiffs to take, direct, or order all appropriate action to protect human health or welfare and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or to request a Court to order such action.

25

## XVI.   COVENANTS BY SETTLING DEFENDANT

67.      **Covenants by Settling Defendant**

a.       Subject to ¶ 68, Settling Defendant covenants not to sue and shall not assert any claim or cause of action against the United States or the State under CERCLA, section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, the Missouri Hazardous Waste Cleanup law, §§ 260.500 to 260.550 RSMo, the Missouri Hazardous Waste Management Law, §§ 260.350 to 260.430 RSMo, other State law, or at common law regarding the Work, past response actions relating to the Site, Past Response Costs, Future Response Costs, State Past Response Costs, and State Future Response Costs.

b.       Subject to ¶ 68, Settling Defendant covenants not to seek reimbursement from the Fund through CERCLA or any other law for costs of the Work and past response actions regarding the Site, Past Response Costs, State Past Response Costs, Future Response Costs, and State Future Response Costs.

68.      **Settling Defendant's Reservation**. The covenants in ¶ 67 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States or the State to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 64.a through 64.h.

69.      ***De Minimis*/Ability to Pay Waiver**. Settling Defendant shall not assert any claims and waive all claims or causes of action (including claims or causes of action under sections 107(a) and 113 of CERCLA) that it may have against any third party who enters or has entered into a *de minimis* or "ability-to-pay" settlement with EPA to the extent Settling Defendant's claims and causes of action are within the scope of the matters addressed in the third party's settlement with EPA, provided, however, that this waiver does not apply if the third party asserts a claim or cause of action regarding the Site against the Settling Defendant. Nothing in the Decree limits Settling Defendant's rights under section 122(d)(2) of CERCLA to comment on any *de minimis* or ability-to-pay settlement proposed by EPA.

## XVII. EFFECT OF SETTLEMENT; CONTRIBUTION

70.      The Parties agree and the Court finds that: (a) the complaint filed by the United States in this action is a civil action within the meaning of section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which Settling Defendant has, as of the Effective Date, resolved its liability to the United States within the meaning of sections 113(f)(2) and 113(f)(3)(B) of CERCLA; and (c) Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Decree. The contribution protection under the preceding sentence extends to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant. The "matters addressed" in this Decree are the Work, Past Response Costs, Future Response Costs, State Past Response Costs, and State Future Response Costs provided, however, that if the United States

exercises rights under the reservations in ¶¶ 64.a through 64.h, the "matters addressed" in this Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

71.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify DOJ and EPA and the State no later than 60 days prior to the initiation of such suit or claim. Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify DOJ and EPA and the State within 10 days after service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify DOJ and EPA and the State within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

72.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against Settling Defendant by either Plaintiff for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case.

73.     Nothing in this Decree diminishes the right of the United States under section 113(f)(2) and (3) of CERCLA to pursue any person not a party to this Decree to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2).

## XVIII.     RECORDS

74.     **Settling Defendant Certification**. Settling Defendant certifies individually that: (a) it has implemented a litigation hold on documents and electronically stored information relating to the Site, including information relating to its potential liability under CERCLA regarding the Site, since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site; and (b) it has fully complied with any and all EPA and State requests for information under sections 104(e) and 122(e) of CERCLA, and section 3007 of RCRA, and State law.

75.     **Retention of Records and Information**

a.     Settling Defendant shall retain, and instruct its contractors and agents to retain, the following documents and electronically stored data ("Records") until 10 years after the Certification Completion of the Work under SOW ¶ 5.8 (the "Record Retention Period"):

(1)     All records regarding Settling Defendant's liability under CERCLA regarding the Site;

(2)     All reports, plans, permits, and documents submitted to EPA in accordance with this Decree, including all underlying research and data; and

(3)     All data developed by, or on behalf of, Settling Defendant in the course of performing the Remedial Action.

b.     At the end of the Record Retention Period, Settling Defendant shall notify EPA that it has 90 days to request the Settling Defendant's Records subject to this Section. Settling Defendant shall retain and preserve their Records subject to this Section until 90 days after EPA's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

76.     Settling Defendant shall provide to EPA and the State, upon request, copies of all Records and information required to be retained under this Section. Settling Defendant shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

77.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a record requested by Plaintiffs is privileged or protected as provided under federal law, in lieu of providing the record, provided that Settling Defendant complies with ¶ 77.b, and except as provided in ¶ 77.c.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendant shall provide the record to Plaintiffs in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all records that they claim to be privileged or protected until Plaintiffs have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c.     Settling Defendant shall not make any claim of privilege or protection regarding: (1) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (2) the portion of any record that Settling Defendant is required to create or generate in accordance with this Decree.

78.     **Confidential Business Information (CBI) Claims**. Settling Defendant may claim that all or part of a record provided to Plaintiffs under this Section is CBI to the extent permitted by and in accordance with section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and shall clearly identify all records or parts thereof submitted under this Decree for which they claim is CBI by labeling each page or each electronic file "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendant claims to be CBI will be afforded the protection specified in 40 C.F.R. part 2, subpart B. If no CBI claim accompanies records when they are submitted to EPA and the State, or if EPA notifies Settling Defendant that the records are not entitled to confidential treatment

28

under the standards of section 104(e)(7) of CERCLA or 40 C.F.R. part 2, subpart B, the public may be given access to such records without further notice to Settling Defendant.

79. In any proceeding under this Decree, validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA, if relevant to the proceeding, is admissible as evidence, without objection.

80. Notwithstanding any provision of this Decree, Plaintiffs retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIX. NOTICES AND SUBMISSIONS

81. All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

|  |  |
|---|---|
| As to DOJ: | *via email to*:<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-3-08035/4 |
| As to EPA: | *via email to*:<br>Bob Jurgens, Superfund & Emergency Mgmt. Div. Director<br>Jurgens.Bob@epa.gov<br>    and<br>Hoai Tran, Remedial Project Manager<br>Tran.Hoai@epa.gov<br>Re: Site/Spill ID # 07WS |
| As to the Regional Financial Management Officer: | *via email to*:<br>mccullough.michael@epa.gov<br>Re: Site/Spill ID # 07WS |
| As to the State: | Jessica Milne<br>Jessica.milne@dnr.mo.gov |

<table>
<tr><td>As to Settling<br>Defendant:</td><td><i>via email to</i>:<br>F. Leland Roberts<br>C/O U.S. Borax, Inc.<br>4700 Daybreak Parkway<br>South Jordan, Utah 84009<br>Telephone: +1 (801) 231 8962<br>Email: leland.roberts@riotinto.com</td></tr>
</table>

## XX.   APPENDIXES

82.      The following appendixes are attached to and incorporated into this Decree:

"Appendix A" is the IROD.

"Appendix B" is the SOW.

"Appendix C" is the map of the Site.

## XXI.  MODIFICATIONS TO DECREE

83.      Except as provided in ¶ 20 of the Decree and ¶ 7.6 of the SOW (Approval of Deliverables), nonmaterial modifications to Sections I through XXV and the Appendices must be in writing and are effective when signed (including electronically signed) by the Plaintiffs and Settling Defendant. Material modifications to Sections I through XXV and the Appendices must be in writing, signed (which may include electronically signed) by the Plaintiffs and Settling Defendant, and are effective upon approval by the Court. As to changes to the remedy, a modification to the Decree, including the SOW, to implement an amendment to the IROD that "fundamentally alters the basic features" of the Remedial Action within the meaning of 40 C.F.R. § 300.435(c)(2)(ii) will be considered a material modification.

## XXII. SIGNATORIES

84.      The undersigned representative of the United States, the undersigned representative of the State, and each undersigned representative of a Settling Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XXIII.        PRE-ENTRY PROVISIONS

85.      If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶ 86 and ¶ 87, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

86.      This Decree will be lodged with the Court for at least 30 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the comments regarding the Decree

disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate.

87. Settling Defendant agrees not to oppose or appeal the entry of this Decree.

## XXIV. INTEGRATION

88. This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXV. FINAL JUDGMENT

89. Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 among the Parties.

**SO ORDERED** this ____ day of _____, 20__.

_____

United States District Judge

Signature Page for Consent Decree in *U.S. and State of Missouri v. U.S. Borax, Inc.* (W.D. Mo.)

**FOR THE UNITED STATES:**

Adam R. F. Gustafson
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

6/4/2026
Dated

/s/ Erika Wells
Erika M. Wells
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-3258
Erika.wells@usdoj.gov

R. Matthew Price
United States Attorney
Western District of Missouri

Jeffrey P. Ray
First Asst. U.S. Attorney/Civil Chief
Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-3130
jeffrey.ray@usdoj.gov

32

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

June 4, 2026
_____
Dated

LESLIE HUMPHREY
Digitally signed by LESLIE HUMPHREY
Date: 2026.06.05 10:54:57 -05'00'
_____
Leslie Humphrey
Regional Counsel
U.S. Environmental Protection Agency
Region 7

JAMES MACY
Digitally signed by JAMES MACY
Date: 2026.06.04 14:48:46 -05'00'
_____
Jim Macy
Regional Administrator
U.S. Environmental Protection Agency
Region 7
11201 Renner Blvd.
Lenexa, KS 66219

SHANNON MARCANO
Digitally signed by SHANNON MARCANO
Date: 2026.06.05 09:18:09 -05'00'
_____
Shannon Marcano
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 7
11201 Renner Blvd.
Lenexa, KS  66219

33

Signature Page for Consent Decree in *U.S. and State of Missouri v. U.S. Borax, Inc.* (W.D. Mo.)

**FOR THE STATE OF MISSOURI:**

CATHERINE L. HANAWAY
Attorney General
State of Missouri

05/01/2026
Dated

Richard N. Groeneman
Assistant Attorney General
Missouri Bar No. 57157

P. O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7834
Facsimile: (573) 751-5660

34

Signature Page for Consent Decree in *U.S. and State of Missouri v. U.S. Borax, Inc.* (W.D. Mo.)

**FOR U.S. BORAX, INC.:**

28-April-2026

Dated

Name: STEPHEN BOURN
Title: GENERAL MANAGER – CLOSURE DELIVERY
Address: 4700 W DAYBREAK PARKWAY
SOUTH JORDAN, UT, 84009

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

| | |
|---|---|
| Name: | U.S. Borax Inc. |
| Title: | Registered Agent |
| Company: | Corporation Service Company |
| Address: | 15 West South Temple, Suite 600 |
| | Salt Lake City, UT 84101 |
| Phone: | (385) 563-3550 |
| email: | |

35

Case 4:26-cv-00482-FJG    Document 2-1    Filed 06/05/26    Page 35 of 35